Argued and submitted August 6, affirmed November 26, 2003

Rockie ZIMMERMAN,
aka Rocky Zimmerman,
*Appellant,*

*v.*

STATE OF OREGON,
*Respondent.*

01-2252; A117732

79 P3d 910

John P. Salisbury argued the cause and filed the brief for appellant.

Timothy A. Sylwester, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Armstrong and Brewer, Judges.

BREWER, J.

**BREWER, J.**

Petitioner appeals from a judgment dismissing this action for post-conviction relief on the ground that he is a fugitive from justice. Petitioner asserts that the post-conviction court lacked authority to dismiss the action based on the "fugitive dismissal rule," which, he asserts, authorizes only the dismissal of appeals. Petitioner also argues that, even if the court had such authority, it abused its discretion in dismissing this action. We affirm.

The following facts are undisputed. On June 10, 1999, petitioner was convicted in Clatsop County Circuit Court of third-degree robbery. The court sentenced him to six months' imprisonment and 24 months' post-prison supervision. Petitioner did not report to custody on June 11, 1999, as ordered, and a warrant was issued for his arrest. Petitioner nevertheless appealed his conviction. We dismissed that appeal on April 19, 2000, because petitioner had failed to surrender to custody. Petitioner later committed a new crime in Colorado, and he was convicted and sentenced to five years' imprisonment for that offense.[1] On August 15, 2001, while he was imprisoned in Colorado, petitioner filed this action for post-conviction relief from his Oregon conviction.

At a hearing held in January 2002, the post-conviction court *sua sponte* raised the issue of whether it was authorized to dismiss the action on the ground that petitioner was a fugitive.[2] On the scheduled trial date, February 19, 2002, the state orally moved to dismiss the action on that ground. The post-conviction court granted the motion, stating:

"Well, I will find that [petitioner] is a fugitive from justice. * * * [He] has never reported to serve his sentence [on

---

[1] The record does not reveal the length of time that petitioner was at large after he failed to report to serve his Oregon sentence. However, petitioner was at large when we dismissed his direct appeal in June 2000, and he was in custody in Colorado when he filed his post-conviction petition in August 2001.

[2] At that hearing, petitioner's counsel conceded that two of petitioner's claims could have been raised on direct appeal and agreed to withdraw them. The post-conviction court issued a memorandum order, identifying the withdrawn issues and the issues that remained. Petitioner does not challenge any portion of that ruling on appeal.

the Oregon conviction], or appeared in this court in any manner. He filed this Petition for Post Conviction Relief from some place in Colorado, and has not appeared in this proceeding."

The court entered a judgment dismissing the action, and this appeal followed.

ORAP 8.05(3) provides:

"If a defendant in a criminal case, a petitioner in a post-conviction relief proceeding, a plaintiff in a habeas corpus proceeding, a petitioner in a parole review proceeding, or a petitioner in a prison disciplinary case, on appeal of an adverse decision, escapes or absconds from custody or supervision, the respondent on appeal may move for dismissal of the appeal. If the appellant has not surrendered at the time the motion is decided by the court, the court shall allow the motion and dismiss the appeal or judicial review."

Petitioner asserts that the post-conviction court lacked authority to "disentitle petitioner to a hearing on the merits" because ORAP 8.05(3), as well as case law authorizing the dismissal of *appeals* where the appellant has absconded, do not authorize the dismissal of actions before a *trial* court. Petitioner also asserts that, even if the post-conviction court had inherent authority to dismiss the action, it abused its discretion in doing so because less drastic means were available to ensure his submission to the court's authority. For example, petitioner observes that ORS 138.620 provides for appearance of witnesses by telephonic means, thus accommodating the circumstances of petitioners that are in custody. Finally, petitioner contends that the court abused its discretion by dismissing this action because he surrendered to its jurisdiction by filing the action and that he "renews his surrender to this Court."

The state responds that the absence of a specific statute authorizing the post-conviction court's decision is inconsequential because the court had inherent authority to dismiss a post-conviction action filed by a fugitive petitioner. The state argues that "if being a fugitive is sufficient to disentitle a convicted defendant to pursue a direct appeal," then "*a fortiori* [ ] it should disentitle him to pursue a post-conviction proceeding." The state also asserts that petitioner has not

surrendered to the post-conviction court's jurisdiction because he never has begun serving his Oregon sentence, a warrant remains outstanding for his arrest, and he remains physically unable to begin serving that sentence as a consequence of incarceration in Colorado that "is entirely the result of his own *voluntary and illegal* activities." (Emphasis in original.)

We first consider whether, as a matter of law, the post-conviction court had authority to dismiss this action on the ground that petitioner was a fugitive from justice. If we conclude that the court had such authority, we review its decision to dismiss the action for an abuse of discretion. *Phan v. Morrow*, 185 Or App 628, 633, 60 P3d 1111 (2003).

The fugitive dismissal rule has a longstanding history in Oregon in the appellate context. It began and, to a significant extent, has remained a creature of judicial decision-making. In *State v. Broom*, 121 Or 202, 210, 253 P 1044 (1927), the Oregon Supreme Court "unqualifiedly committed" itself to the rule that "when it satisfactorily appears to the appellate court that a convicted criminal has fled from the jurisdiction of the court, it is within the power of that court to refuse to hear [the] appeal." In determining whether to apply the fugitive dismissal rule, the following considerations are relevant: "risk of unenforceability, efficient operation of the appellate process, protection of the dignity of the appellate court and deterrence." *State v. Lundahl*, 130 Or App 385, 389 n 5, 882 P2d 644 (1994) (citing *Ortega-Rodriguez v. United States*, 507 US 234, 242, 113 S Ct 1199, 122 L Ed 2d 581 (1993)).

In 1994, the Supreme Court adopted ORAP 8.05(3), quoted above. However, we recently have held that we have inherent judicial authority, in circumstances to which ORAP 8.05(3) does not by its terms apply, to dismiss an appeal filed by a person who has failed to submit to custody pursuant to a court order. *Pruett and Pruett*, 185 Or App 669, 677, 60 P3d 1094, *rev den*, 335 Or 443 (2003). In *Pruett*, a contempt case, we dismissed an appeal where the defendant had "deliberately and repeatedly flouted the trial court's contempt judgments by failing to surrender to authorities to serve his jail sentence." *Id.* at 678. We concluded that the defendant

"should not be permitted to flout the trial court's judgments and, at the same time, have the benefit of the appellate process." *Id.* We relied on the principle that an appellant "should not be able to enjoy the benefits of the law while unlawfully avoiding its rigor." *Id.* at 674-75 (internal quotation marks omitted; quoting *State v. Sterner,* 124 Or App 439, 443, 862 P2d 1321 (1993), *rev den,* 318 Or 583 (1994)); *see also State v. Smith,* 312 Or 561, 564, 822 P2d 1193 (1992) ("Although defendant's absconding from probation does not deny this court the power to review his case, we, in our discretion, decline to call upon the resources of this court for a review of his case.").

Although *Pruett* and the cases on which we relied there all involved the dismissal of appeals, there is no logical reason to conclude that post-conviction courts lack similar inherent authority. Like appellants in direct criminal appeals, and unlike defendants prosecuted before a trial court in original criminal actions, post-conviction petitioners affirmatively seek relief from the court. Where a post-conviction petitioner has, by absconding from the court's jurisdiction, deliberately flouted the court's authority in the underlying criminal action, and it is uncertain, in light of the petitioner's absence from the state, whether a judgment upholding the petitioner's conviction, without more, would result in the petitioner's being subject to enforcement of that conviction, each of the rationales underlying the fugitive dismissal rule is applicable. Like an appellate court, a post-conviction court has a valid interest in the enforceability of its judgments and, as a corollary, in avoiding the fruitless expenditure of its judicial resources. *See, e.g.,* ORS 1.010(1) - (4) (a court has authority to preserve and enforce order, to enforce order in the proceedings, to provide for the orderly conduct of proceedings, and to compel obedience to its judgments); *Frost v. Lotspeich,* 175 Or App 163, 176-78, 30 P3d 1185 (2001) (discussing trial courts' inherent authority to impose sanctions for contempt).

■ We have implicitly assumed that trial courts have inherent authority, reviewable for abuse of discretion, to dismiss post-conviction actions where the petitioner is not amenable to the court's jurisdiction. In *Dinh v. Zenon,* 143 Or

App 444, 923 P2d 1287 (1996), we concluded that the post-conviction court erred in dismissing an action for post-conviction relief where the petitioner was unable to appear in the post-conviction proceeding because federal immigration authorities refused to release him from their custody. However, we assumed that the post-conviction court had inherent authority to dismiss the action in appropriate circumstances. We said:

> "The parties cite no Oregon cases involving the dismissal of post-conviction actions because of a petitioner's absence, and we are not aware of any. Nevertheless, and without necessarily endorsing all the particulars of petitioner's analogy to dismissal under ORCP 46 B(2)(c) for failure to produce discovery, we agree that the propriety of the court's dismissal should be tested against an abuse of discretion standard."

*Dinh*, 143 Or App at 448-49 (footnote omitted). We now make explicit our implicit holding in *Dinh*; that is, subject to review for abuse of discretion, a post-conviction court has inherent authority to dismiss an action for post-conviction relief if the petitioner has absconded and remains absent when the action is commenced.[3]

The question remains whether the post-conviction court abused its discretion in dismissing the action. In making that determination, we consider the rationales for the fugitive dismissal rule in light of the circumstances of this case. Petitioner relies on the following factors to support his argument that the post-conviction court abused its discretion in dismissing the action.

---

[3] We reject without extended discussion petitioner's argument that no such authority exists because the statutory scheme for post-conviction actions is comprehensive, and the legislature has failed expressly to confer that authority on post-conviction courts. The same could be said for the statutory scheme for direct criminal appeals, ORS 138.005 to 138.504. Nothing in that scheme authorizes an appellate court to dismiss an appeal on the ground that the appellant is a fugitive from justice, but inherent authority to do so nevertheless exists. There is nothing in the post-conviction statutory scheme that suggests that the legislature intended to limit the court's inherent authority to apply the fugitive dismissal rule. *Cf. Ortwein v. Schwab*, 262 Or 375, 385-86, 498 P2d 757 (1972), *aff'd*, 410 US 656, 93 S Ct 1172, 35 L Ed 2d 572 (1973) (concluding that court did not have authority to waive filing fee where legislature required payment of the fee); *Frost*, 175 Or App at 178 (concluding that trial court's contempt sanction exceeded legislatively prescribed limits on the court's authority).

■ First, petitioner asserts that his physical presence in Oregon is not necessary to the orderly adjudication of this action because his testimony can be obtained telephonically from prison in Colorado. He relies on ORS 138.620(2), which provides, in part:

> "If the petition states a ground for relief, the court shall decide the issues raised and may receive proof by affidavits, depositions, oral testimony or other competent evidence. Oral testimony may be taken via telephonic or other means approved by the court."

That argument is not persuasive because petitioner's ability to testify by telephone or otherwise participate in the post-conviction trial through counsel or by affidavit does not satisfy all of the rationales supporting the fugitive dismissal rule. Petitioner's unlawful conduct has resulted in his incarceration in another state and his consequent inability to submit himself to the present authority of the post-conviction court. We see no reason why a petitioner who has acted unlawfully in absconding after sentencing should be able to avail himself of the Oregon judicial process merely because he can participate electronically from a remote location.

Second, petitioner contends that "[t]he trial court had at its disposal other sanctions, such as probation violation proceedings, extradition procedures, and detainers * * *." Again, we disagree. Petitioner was not on probation and even if he were, the post-conviction court is not the proper court to impose those types of sanctions. Also, although petitioner is a fugitive subject to extradition under the Uniform Criminal Extradition Act, ORS 133.743 to 133.857, *see Betschart v. Spinden*, 172 Or App 668, 673, 20 P3d 202, *rev den*, 332 Or 326 (2001) (a person who is charged with or convicted of a crime and withdraws himself or herself from the consequences of the crime is a fugitive for the purposes of the Uniform Criminal Extradition Act), the post-conviction court is not the authority charged with initiation of such proceedings. *See* ORS 133.767 (governor of state may surrender person upon demand of executive authority of other state). Nor does the record in this case demonstrate that extradition or similar proceedings have occurred and that petitioner is now subject to any sort of detainer or hold

that, if the post-conviction court denies post-conviction relief, will guarantee his availability to serve his Oregon sentence.

Third, petitioner asserts that the post-conviction court should not have dismissed his petition because he now has "surrendered" to its authority. That argument also is unavailing. We are aware of no authority for the proposition that the mere filing of this action or petitioner's assertion of surrender effectuates a cognizable submission to the post-conviction court's authority, much less to the custody, constructive or otherwise, of the authority to whose custody he was sentenced. Moreover, even if we were inclined to regard the filing of petitioner's petition for post-conviction relief as submission to the proper Oregon authorities, that fact alone would not deprive the post-conviction court of discretion to dismiss his petition for post-conviction relief. *See State ex rel Juv. Dept. v. Merrell*, 126 Or App 708, 711, 870 P2d 250 (1994) ("The fact that [youth] returned to custody before we acted on the state's motion is of no significance.").

Finally, petitioner relies on *Dinh*, where, he asserts, under similar circumstances to those present here, we held that the post-conviction court had abused its discretion by dismissing a post-conviction action. *Dinh*, however, is materially distinguishable from this case. In *Dinh*, the petitioner filed a petition for post-conviction relief while he was in the custody of the Oregon Department of Corrections. 143 Or App at 446. The matter was originally set for trial in November 1994, but, by that time, the Department of Corrections had released the petitioner to the custody of the United States Immigration and Naturalization Service (INS). The post-conviction court postponed the trial until January 27, 1995, and stated that, if the petitioner did not appear on that date, the action would be dismissed. In December 1994, the petitioner's counsel obtained an order from the Marion County Circuit Court directing the Marion County Sheriff to transport the petitioner from the custody of the INS in Seattle to Salem on January 26, 1995, and to return him to the custody of the INS at the conclusion of the January 27, 1995, trial. However, the INS refused to release the petitioner pursuant to the transportation order and, thus, he was unable to appear for trial on January 27, 1995. *Id*.

On the day of trial, the petitioner's counsel tendered to the court a waiver of appearance that the petitioner had executed in November 1994, which authorized his counsel and the court to proceed in his absence. However, the post-conviction court was not satisfied with those arrangements, and it dismissed the action. On appeal, the petitioner argued that the dismissal constituted an abuse of discretion. We agreed, explaining:

> "It is undisputed that petitioner, by obtaining the transportation order, took reasonable steps to insure his presence for trial. It is also undisputed, as the trial court acknowledged, that petitioner was unable to appear because federal immigration authorities refused to honor the transportation order. Thus, petitioner did what he could to appear but, through no fault of his own, was precluded from appearing. Given those circumstances, the court erred in dismissing petitioner's action."

*Id.* at 449. Our decision thus hinged on the petitioner's efforts to cooperate with the post-conviction court. Unlike the circumstances here, there was no suggestion that the petitioner had ever absconded from the court's jurisdiction. Instead, he merely was unable to appear because of the INS hold.

Again, here, as a procedural matter, the post-conviction court could have permitted petitioner to appear by telephone from a remote location. However, the record is devoid of evidence that, as of the time of the post-conviction hearing, petitioner had taken any substantive action, such as submission to an extradition proceeding, that would guarantee that, if the court denied relief, petitioner would serve his sentence. Under those circumstances, the post-conviction court did not abuse its discretion in dismissing the action.

Affirmed.