728 March 3, 2016 No. 12

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON,
*Respondent on Review,*

*v.*

ANTHONY JAMES LAZARIDES,
*Petitioner on Review.*

(CC 12114997C; CA A155380; SC S063282)

On review from the Court of Appeals.*

Submitted on the record on October 26, 2015.

Ernest G. Lannet, Chief Defender, Salem, filed the brief for petitioner on review. With him on the brief was Marc D. Brown, Chief Deputy Defender, Office of Public Defense Services.

Robert M. Wilsey, Assistant Attorney General, Salem, filed the brief for respondent on review. With him on the brief were Ellen F. Rosenblum, Attorney General, and Paul L. Smith, Deputy Solicitor General.

Before Balmer, Chief Justice, and Kistler, Walters, Landau, Baldwin, Brewer and, Nakamoto, Justices.**

NAKAMOTO, J.

The decision of the Court of Appeals is reversed, and the case is remanded to the Court of Appeals for further proceedings.

_____

\* Appeal from Malheur County Circuit Court Lung S. Hung, Judge.

\*\* Linder, J., retired December 31, 2015, and did not participate in the decision of this case.

**NAKAMOTO, J.**

While defendant's criminal appeal was pending before the Court of Appeals, he absconded from post-prison supervision, prompting the state to move for dismissal of his appeal. After defendant had been arrested and returned to supervision, the Court of Appeals granted the state's motion to dismiss. Later, the Court of Appeals denied defendant's motion for reconsideration and declined to reinstate his appeal after the state supplied additional information concerning defendant's behavior. Under the current version of ORAP 8.05(3), adopted in 2015, if an appellate court "determines that the appellant is on *** abscond status at the time the court decides the motion, the court may dismiss the appeal or judicial review." This case addresses what motion is at issue when a court determines a defendant's status. We conclude that "the motion" referenced in ORAP 8.05(3) is the motion to dismiss and agree with the parties that the state failed to meet its burden to prove that defendant was on "abscond status" at the time that the Court of Appeals decided that motion. Thus, the court erred in dismissing defendant's appeal, and we reverse and remand.

The facts are procedural. In 2013, defendant was convicted of assaulting a public safety officer, ORS 163.208, and was sentenced to 12 months of incarceration and 24 months of post-prison supervision. Defendant was released on post-prison supervision in late 2014.

By the time of his release on post-prison supervision, defendant had appealed his conviction and had filed his opening brief in the Court of Appeals. On January 16, 2015, the state moved to dismiss defendant's appeal, citing the 2011 version of ORAP 8.05(3), which addressed, among other things, the effect of a criminal defendant absconding while the defendant's case is on appeal. That rule provided, in part:

> "If a defendant in a criminal case, *** on appeal of an adverse decision, escapes or absconds from custody or supervision, the respondent on appeal may move for dismissal of the appeal. *If the appellant has not surrendered at the time the motion is decided by the court*, the court may dismiss the appeal or judicial review."

ORAP 8.05(3) (2011) (emphasis added).

In its motion, the state asserted, and defendant did not dispute, that defendant had absconded from supervision. Defendant had failed to report as directed by his supervision officer, and, in December 2014, the Board of Parole and Post-Prison Supervision (the board) had issued a warrant for his arrest.

Less than a week after the state filed its motion, on January 22, 2015, defendant was arrested and taken to the Yamhill County Jail to serve a 15-day sanction for violating conditions of his post-prison supervision. Defendant was to be released from custody on February 5, 2015. Once defendant was arrested, the parties' arguments in late January and early February focused on whether defendant had voluntarily "surrendered" to authorities, as provided in ORAP 8.05(3) (2011).

On February 25, 2015, the Appellate Commissioner for the Court of Appeals granted the state's motion to dismiss defendant's appeal. The Appellate Commissioner observed that both the state and defendant had cited the inapplicable 2011 version of ORAP 8.05(3). Nevertheless, the Appellate Commissioner rejected defendant's argument that, by the time he responded to the motion, (1) he was back in custody and (2) the state failed to show that he had not voluntarily surrendered. Rather, the Appellate Commissioner concluded, the state showed that defendant had been arrested. On that basis, the Appellate Commissioner dismissed defendant's appeal.

That same day, defendant sought reconsideration of the Appellate Commissioner's order under the current version of ORAP 8.05(3). The current version of the rule provides, in relevant part:

> "If a defendant in a criminal case, *** on appeal of an adverse decision, escapes or absconds from custody or supervision, the respondent on appeal may move for dismissal of the appeal. *If the court determines that the appellant is on escape or abscond status at the time the court decides the motion*, the court may dismiss the appeal or judicial review. If the court has not been advised otherwise, the court may infer that the appellant remains on escape or abscond status when the court considers and decides the motion."

ORAP 8.05(3) (2015) (emphasis added). Defendant asserted that, when the court decided the motion to dismiss, he was no longer on abscond status, explaining that there was no dispute that he had been taken into custody and, although he had been released from jail, there was "no evidence" that he was absconding.

The state contradicted defendant's position and, with its response, provided evidence that defendant had again absconded from supervision. The state provided a copy of a warrant request report from defendant's supervision officer dated February 26 indicating that defendant had violated conditions of his post-prison supervision by failing to report in person to meet with his probation supervisor on February 24—the day before the court granted the state's motion to dismiss—and by failing to report (but calling and offering excuses) on two prior occasions in February. The state also provided a copy of the warrant for defendant's arrest issued by the board on February 26.

On March 18, defendant filed a reply and notified the court that he was back in custody. He provided a copy of an inmate roster page for defendant at the Yamhill County Jail as proof. The roster page listed defendant's arrest date as March 17, 2015, and showed that he had received a second and longer, 26-day incarceration sanction for violating conditions of his post-prison supervision, with a release date of April 6, 2015. Defendant argued that, because he was again in custody, the court, on reconsideration, should reinstate his appeal.

On April 30, 2015, the Chief Judge of the Court of Appeals, pursuant to ORAP 7.55(4), ruled on defendant's motion for reconsideration. The court declined to reinstate defendant's appeal and issued an order denying reconsideration. The court observed that the parties' submissions on reconsideration indicated—and defendant did not dispute—that, at the time the Appellate Commissioner granted the state's motion to dismiss the appeal on February 25, defendant had "absconded from supervision." Through that observation, the court alluded to the basis for dismissal in ORAP 8.05(3) (2015) that "the appellant is on *** abscond status at the time the court decides the motion." The court also rejected the position that an appellate court should reinstate

an appeal on reconsideration "whenever it happens that the offender is caught and involuntarily taken into custody" pursuant to an arrest warrant.

On review, the dispute boils down to how an appellate court must give effect to one phrase in the second sentence in ORAP 8.05(3): "If the court determines that the appellant is on \* \* \* abscond status at the time the court decides the motion." The state concedes that an appellate court "lacks discretion to dismiss an appeal pursuant to ORAP 8.05(3) if, when it decides the motion, an appellant has been returned to custody." The state further concedes that, on February 25, the Appellate Commissioner should have concluded from the information before him that, under ORAP 8.05(3), defendant was no longer on abscond status. However, the state asserts, the updated information before the Court of Appeals on reconsideration established that, as of February 25, defendant had again absconded from supervision by failing to report as required. The state argues that the court correctly considered that new information and, therefore, correctly denied reconsideration and exercised its authority to dismiss the appeal based on defendant's abscond status as of the date that the Court of Appeals granted the state's motion and dismissed his appeal, February 25.

Defendant contends on review that (1) as the state concedes, the state failed to meet its ultimate burden of proving on February 25 that he was on abscond status, given that he had provided the Court of Appeals with evidence that he had been returned to supervision; (2) no later submission of evidence concerning defendant's status on February 25 should be considered; and (3) even if the court could consider the state's later-submitted evidence on reconsideration, that evidence established only that he had failed to report in person to his supervision officer one time, not that he was on "abscond status" as of February 25, as the Court of Appeals implicitly concluded. Accordingly, he concludes, the Court of Appeals lacked authority to dismiss his appeal.

Thus, the parties agree that an appellate court is charged with assessing the defendant's abscond status on a particular date—the date that it decides the motion to

dismiss an appeal. But the rule is silent concerning the procedure that an appellate court must employ to make that assessment, and the parties disagree over whether a court may review additional evidence relevant to the defendant's status after the court first rules on the motion to dismiss the appeal and, if so, whether that additional evidence in this case established that defendant was on abscond status. We took review to decide whether the Court of Appeals properly "determine[d]" that defendant was on "abscond status" under ORAP 8.05(3) on the day that the court decided "the motion" to dismiss his appeal. In construing the rule, adopted by the 2014 ORAP Committee and by joint order of the Chief Justice of the Supreme Court and the Chief Judge of the Court of Appeals, we apply the same interpretive method used for administrative rules, in which the goal is to ascertain the intent of the body promulgating the rule. *State v. Robbins*, 345 Or 28, 37-38, 188 P3d 262 (2008).

Because it is important to our resolution of the procedural issue, we first address the meaning of the term "abscond status," beginning with the rule's text. The term "abscond status," which was added to ORAP 8.05(3) in 2015, is undefined. "When a disputed term in a *** rule is undefined by that rule, we assume that it partakes of its ordinary meaning." *State v. Moss*, 352 Or 46, 48, 279 P3d 200 (2012).

As various dictionary definitions reflect, "status" refers to a person's legal condition. "Status" is defined in *Webster's Third New Int'l Dictionary* 2230 (unabridged ed 2002) this way: "1 a **:** the condition (as arising out of age, sex, mental incapacity, crime, alienage, or public station) of a person that determines the nature of his legal personality, his legal capacities, and the nature of the legal relations to the state or to other persons into which he may enter *** 4 **:** an abnormal condition of a person ***." In *Black's Law Dictionary* 1632 (10th ed 2014), "status" is defined as

> "1. A person's legal condition, whether personal or proprietary; the sum total of a person's legal rights, duties, liabilities, and other legal relations, or any particular group of them separately considered <the status of a landowner>. 2. A person's legal condition regarding personal rights but excluding proprietary relations <the status of a father> <the status of a wife>. 3. A person's capacities

and incapacities, as opposed to other elements of personal status <the status of minors>. 4. A person's legal condition insofar as it is imposed by the law without the person's consent, as opposed to a condition that the person has acquired by agreement <the status of a slave>."

Similarly, *The American Heritage Dictionary of the English Language* 1701 (5th ed 2011) defines "status," among other things, as "Position relative to that of others; standing" and "The legal character or condition of a person or thing."

As for "abscond," we agree with the parties that *Robbins*, in which we addressed the ordinary meaning of the verb in the 2011 version of ORAP 8.05(3), informs what it means to be on "abscond status." As noted, the 2011 version of the rule provided that, if a defendant with a pending criminal appeal "escapes or absconds from custody or supervision," then an appellate court had authority to dismiss the appeal. In *Robbins*, the issue was whether the defendant had "'abscond[ed] from *** supervision'" after missing a single appointment with a probation officer. 345 Or at 33 (brackets in original). We examined dictionary definitions of "abscond," which focused on evasion and hiding, *id.*, and concluded that "'abscond' requires a showing of some kind of conscious intent to evade or avoid legal process." *Id.* at 34. That conclusion was buttressed by the court's case law. *Id.* at 34-37. We further stated that an appellate court may infer the defendant's intent "from the nature of the defendant's acts themselves." *Id.* at 36.

In keeping with *Robbins*, defendant does not argue that the addition of the word "status" in the 2015 version of ORAP 8.05(3) refers to a legal status conferred by anybody in particular, such as the board. Nor does the text of the rule (or the available information about its adoption) indicate that proof an appellant's status requires a showing of action taken against the defendant by the board, such as its issuance of a warrant for the defendant's arrest. Given the common meaning of "status" and the meaning of "abscond," explicated in *Robbins*, we conclude that the term "abscond status" in ORAP 8.05(3) refers to a defendant's legal condition when that defendant is both engaging in evasive conduct and exhibiting an intent to evade or avoid legal process, including, as relevant to this case, post-prison supervision.

Conversely, as the parties agree, a defendant is not on abscond status when that defendant has returned to custody or supervision—whether voluntarily or involuntarily. The history of the 2014 ORAP Committee's adoption of the 2015 version of the rule confirms that conclusion. As we explain, that history demonstrates that the committee concluded that the current version of ORAP 8.05(3) should give effect to a narrow policy of dismissing a criminal appeal of a defendant who has absconded or escaped because the state is not in a position to enforce a judgment, rather than because, through misconduct, the defendant has forfeited or waived the right to appeal.

The background for the committee's decision begins in 2012, when we decided *Moss*, a case in which the state had moved to dismiss an appeal in accordance with ORAP 8.05(3) (2011) because the defendant had not "surrendered" but rather had been arrested. 352 Or at 47. This court concluded that if, at the time the Court of Appeals decided the motion to dismiss, it had been informed that the defendant had voluntarily returned and therefore "surrendered," then that court had no authority to dismiss the appeal. *Id.* at 57-58. The majority of this court concluded that, under the 2011 version of ORAP 8.05(3), a defendant may waive a statutory right to appeal and that is "what a criminal defendant does when he or she absconds from the jurisdiction of the courts once an appeal has been filed." *Id.* at 58.

The dissent disagreed with the majority concerning the meaning of "surrendered" as used in the 2011 rule. And, in summing up, the dissent called on the Chief Justice and the Chief Judge to amend the rule:

"Where the defendant's whereabouts are fully known to the court and the state, and the defendant figuratively is sitting in court awaiting the outcome of his or her appeal, there seems to me to be little or no justification to authorize dismissal of the appeal and, thus, to nullify the defendant's statutory right to appeal. If Oregon's rule now purports to authorize an appellate court to dismiss an appeal even though the defendant has submitted to the state's authority and is in custody, then the rule undermines the statutory right of appeal. *To remedy the problem identified*

> *above, the Chief Justice and the Chief Judge should amend*
> *ORAP 8.05(3) to focus the rule on whether the defendant*
> *has returned to custody following an escape, not on whether*
> *the defendant surrendered to the police purely voluntarily, or*
> *simply has been recaptured.*"

*Id.* at 74-75 (Durham, J., dissenting) (emphasis added).

Within several months of the decision in *Moss*, the Chief Justice and the Chief Judge issued an order temporarily adopting amendments to ORAP 8.05(3) (2011). The 2012 temporary order amended ORAP 8.05(3) to take out references to the appellant's "surrender." First, the sentence concerning an appellant's failure to surrender as a condition for dismissal of the appeal was amended: "If the appellant has not surrendered at the time the motion is decided by the court, the court may dismiss the appeal or judicial review" was changed to "If the appellant is not in custody or under supervision at the time the motion is decided by the court, the court may dismiss the appeal or judicial review." Second, the order struck the last sentence: "If the court has not been advised otherwise, the court may assume that the appellant has not surrendered when the court considers and decides the motion." We do not have documentation of the intent of the Chief Justice and Chief Judge in adopting the temporary amendment to ORAP 8.05(3), but the changes align with Justice Durham's call for an amendment that would allow a criminal appeal to go forward based on whether the appellant had returned and not on whether the appellant had returned voluntarily. The order provided that the temporary amendment would expire on December 31, 2014, if not earlier adopted permanently.

The current version of the rule—which differs from the temporary rule—was recommended by the 2014 ORAP Committee after it addressed whether to adopt or modify the temporary rule. The April 3, 2014, committee meeting agenda stated the issue as "[w]hether to modify the permanent rule permitting the dismissal of appeals or other proceedings brought by escaped or absconded criminal defendants to eliminate ambiguity about whether the prisoner has 'surrendered.'" As part of its agenda, the committee provided the following explanatory note:

"Prior to the temporary amendment, the rule provided that the appellate court could dismiss criminal appeals (as well as other related matters involving criminal convictions and sentences) if the appellant was a criminal defendant who had escaped or absconded from custody or supervision and the defendant had not 'surrendered' before the court ruled. The term 'surrendered' could be ambiguous (if a defendant is arrested at gunpoint, has he surrendered?). It also raises questions about why the appellate courts are dismissing the matter (whether it is because the appellate court cannot enforce a judgment against a fleeing defendant, or whether the defendant's escape waives the right to pursue an appeal). The temporary amendment removed the term 'surrender' and now allows dismissal if the escaped appellant 'is not in custody or under supervision.'"

In addition, the agenda contained the text for the permanent rule proposed by Ernest Lannet, then the Chief Deputy Defender with the Office of Public Defense Services, and Anna Joyce, then the Solicitor General. The agenda also summarized the committee's February meeting concerning the rule, which explained a two-part rationale for the proposed text of a permanent rule:

"At the February 28 meeting, the committee generally supported the 'narrow' policy reason for the rule (the inability of the appellate court to enforce a judgment against a fleeing defendant). Concern was expressed, however, about the temporary rule's use of the term 'under supervision.' Solicitor General Joyce and Chief Deputy Defender Lannet conferred and suggested the revision shown."

The committee adopted the proposed text, and, in November 2014, the Chief Justice and the Chief Judge issued an order adopting permanent amendments to the Oregon Rules of Appellate Procedure, effective January 1, 2015, including the amendment establishing the current form of ORAP 8.05(3). Thus, the history of the rule's amendment establishes that the current version of the rule was intended to implement the "narrow" policy rationale for the rule—"the inability of the appellate court to enforce a judgment against a fleeing defendant"—as opposed to the broader "waiver of appeal" policy behind the 2011 version of the rule.

That narrow policy rationale for dismissal of a criminal appeal under ORAP 8.05(3) supports defendant's position that, when an appellate court decides the motion, it is deciding the motion to dismiss, and the court reviews the evidence before it at that time. Under that rationale, whether a court should grant a motion to dismiss the appeal because the defendant no longer is present and subject to the justice system is time-specific, in a way that is far different than when a court considers whether the defendant committed an act in the past that will be deemed a waiver of the right to appeal, no matter whether he or she is then in custody. When the defendant's prior waiver of the appeal right is the issue, the timing of the court's determination of the existence of such a waiver does not matter.

And, as a practical matter, that view of the procedure to be followed under the rule encourages both the state and the defendant to be diligent in their presentation of evidence concerning the defendant's status when the state files a motion to dismiss a criminal appeal, and it discourages the filing of motions to dismiss that are not factually well-grounded. The statutory right to appeal is a significant one for a criminal defendant, and an erroneous determination of such a motion in the first instance can be more readily corrected on a motion for reconsideration when the record developed for the motion to dismiss is, effectively, closed.

We also note that, if the state has failed to meet its burden of rebutting a defendant's evidence that he has returned to custody, the state is not barred from filing another motion to dismiss if circumstances have changed and the defendant is again on abscond status. The state did not refile in this case. Thus, we hold that, under ORAP 8.05(3), an appellate court determines whether a criminal defendant is on abscond status as of the date it decides the motion and based on the evidence before it on that date.[1]

---

[1] The state also argues that, if ORAP 8.05(3) did not permit the Court of Appeals to consider new evidence of defendant's status on February 25 when it considered and denied defendant's motion for reconsideration, we should affirm nevertheless because the Court of Appeals was exercising its inherent authority to dismiss the appeal. We decline to address that argument because the state raises it for the first time on review and the motion to dismiss was litigated—and decided—based on ORAP 8.05(3).

In this case, the state failed to meet its burden of proof. The state concedes, and appropriately so, that on February 25, 2015, when the Appellate Commissioner granted the state's motion to dismiss defendant's appeal, the evidence of defendant's abscond status was lacking. The state provided evidence that defendant had earlier absconded from supervision, but defendant established that he had been arrested and was sanctioned, and the state provided no evidence that on February 25, defendant was both engaging in evasive conduct and exhibiting an intent to evade or avoid supervision. Accordingly, the Court of Appeals erred, both when it ordered the dismissal of defendant's appeal and when it failed to reinstate defendant's appeal on reconsideration, and the court must reinstate defendant's appeal on remand.

The decision of the Court of Appeals is reversed, and the case is remanded to the Court of Appeals for further proceedings.